*1034 VAIDIK, Chief Judge,
concurring in part and dissenting in part.
I applaud the well-written and well-reasoned opinion of my colleagues, and I wholeheartedly concur in all but one respect. I respectfully disagree with my colleagues’ conclusion that XL/Century is only liable for the portion of damages that occurred in its policy periods. Rather, I agree with the trial court that the XL/ Century policies’ use of the phrase “those sums” instead of “all sums” does not constitute the clear proration language that our Supreme Court in Dana II Court noted that insurers needed to use to limit their liability to only those damages that occur in their policy period. I would affirm the trial court’s entry of summary judgment in favor of Thomson on this issue.
Dana II involved insurance coverage for environmental-cleanup costs in nineteen states where contamination occurred over the course of several years. In Dana II, the policies provided that Allstate would pay “all sums which [Dana] shall be obligated to pay by reason of the liability ... imposed upon [Dana] by law ... for damages because of [personal injury or property damage] ... caused by an OCCURRENCE. ...” 759 N.E.2d 1049, 1057 (Ind.2001) (emphasis added). In determining coverage for liability from personal injury or property damage, “occurrence” was defined as “an accident, event or happening including continuous or repeated exposure to conditions which resulted], during the policy period, in Personal Injury [or] Property Damage ... neither expected nor intended from the standpoint of the Insured.” Id. (emphasis added). Our Supreme Court noted that the “policies re-quirefd] Allstate to indemnify Dana for all sums paid as a result of liability arising from any covered accident or event resulting in property damage or personal injury that occurr[ed] during the policy period.” Id. Allstate, however, contended that it was responsible for only the portion of damages incurred in a particular policy period. Id. It argued for a proportional allocation of damages among each triggered policy period. Id.
The Supreme Court found, however, that there was no language in the coverage grant, including the definitions of “property damage,” “personal injury,” or “occurrence,” that limited Allstate’s responsibility to indemnification for liability derived solely for that portion of damages that took place within the policy period. Id. at 1058. By the policy’s terms, once an accident or event resulting in Dana’s liability — an occurrence — took place within the policy period, Allstate must indemnify Dana for “all sums” Dana must pay as a result of that occurrence, subject to the policy limits. Id. Accordingly, the Supreme Court held that regardless of whether the damaging effects of an occurrence continued beyond the end of the policy period, if coverage was triggered by an occurrence, it was triggered for “all sums” related to that occurrence. Id.
The policy at issue here provides:
SECTION I — COVERAGES
COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of “bodily injury” or “property damage” to which this insurance applies....
⅝ ⅝ ⅜ ⅜ ⅝ ⅜
b. This insurance applies to “bodily injury” and “property damage” only if:
(1) The “bodily injury” or “property damage” is caused by an “occur *1035 rence” that takes place in the “coverage territory”; and
(2) The “bodily injury” or “property damage” occurs during the policy period....
Thomson’s AO App. p. 345 (emphases added). The difference between this policy and the policy in Dana II is that this policy uses the phrase “those sums” instead of “all sums.” Contrary to the majority’s implication, both policies use the phrase “during the policy period.” See Dana II, 759 N.E.2d at 1057 (defining “occurrence” as “an accident, event or happening including continuous or repeated exposure to conditions which results, during the policy period, in Personal Injury [or] Property Damage ... neither expected nor intended from the standpoint of the Insured.” (emphasis added)).
I agree with the trial court that the use of the terms “those sums” instead of “all sums” does not change the result and that using “those” instead of “all” does not constitute the clear proration language that our Supreme Court in Dana II noted that insurers needed to use to support proration. Accordingly, if XL/Century wanted to require proration of payment to only that portion of bodily injury that took place in a policy period, it should have done so more directly by using careful language. Contrary to the majority, I do not think that simply trading “some” for “all” is “direct[] enough.” Op. at 1021.
Businesses make calculated decisions to purchase insurance to protect against future unknown risks. Insurers and insureds determine the amount of premiums they are willing to offer and pay based upon their assessment of risk. In other words, each calculate the risk and determine the cost based on the potential risks. Long-tail claims, where damages evolve over a long period of time, are one of those risks. There is no dispute that the policies in question here involve long-tail claims. The only question is whether XL/Century may prorate their coverage to apply only to damages occurring in their policy periods.
XL/Century, as the drafters of these policies, were decidedly in the driver’s seat when defining the risk that they were insuring with regard to these covered long-tail claims. If XL/Century meant to say that they were liable for those evolving damages incurred only during the period of their policies, they should have said so.
As Thomson points out in its brief, it will be difficult for a court to determine exactly when and in what amount damages occurred. The majority answers this by giving the trial-court judge two main tests to decide upon and “broad discretion in selecting and applying an apportionment method.” Id. at 1023. This is unfair to the insurance companies, Thomson, and its employees. The risk that each of the parties calculated in offering and buying insurance is as uncertain post injury as ever. The majority opinion also has broad-range consequences for future long-tail coverage cases as the risk that each future insurer and insured calculate up front are now subject to change based upon the vicissitudes of 400 trial-court judges who have received little or no direction from us.
For these reasons I agree with Dana II and determine that the language of these policies is not specific enough to demand proration of damages. If insurance companies want to limit only those evolving damages that occurred during the life of their policies, then they must be specific so as to give notice to the insureds of what may come.